## STATE *v.* J. B. BRYANT.

Upon the trial of an indictment under chap. 32, sec. 72, Battle's Revisal, (betting on a game of chance,) the jury returned a special verdict, finding: At the time specified in the indictment, there was kept a place on Wilmington street, in Raleigh, where there were sold, small oval shaped cards, with certain numbers on them; that there were also in a box a certain number of envelopes, containing each one card with a number on it. The party bought one of the cards, and was permitted to draw from the box an envelope; if the number on the card corresponded with any one of the numbers on the oval card, the purchaser got ten times the amount invested. The envelopes and the oval cards were kept on a table at which the proprietor stood. The defendant bought and drew a card at the time specified in the bill of indictment. It was called a gift enterprise, and so licensed. *Held:* That the enterprise was a lottery, and the parties who sold the tickets were not indictable under said section, and the purchaser thereof was not indictable at all, for the reason that the statute did not make it an indictable offence to purchase lottery tickets.

INDICTMENT, tried before *Watts, J.*, and a jury at January Term, 1875, of the Superior Court of WAKE county.

The defendant was indicted under chap. 32, sec. 72, Battle's Revisal, for playing at a game of chance. The jury rendered the following special verdict:

At the time specified in the indictment, there was kept a place, on Wilmington street, in Raleigh, where there were sold small oval shaped cards with certain numbers on them; that there were also in a box a certain number of envelopes, containing each one card with a number on it. The party bought one of the cards and was permitted to draw from the box an envelope; if the number on the card corresponded to any one of the numbers on the oval card, the purchaser got ten times the amount invested. The envelopes and the oval cards were kept on a table at which the proprietor stood.

2. The defendant bought and drew at the time specified in the bill of indictment.

3. It was called a gift enterprise and so licensed.

4. If, upon this state of facts, the court be of the opinion that the defendant is guilty, the jury so find, otherwise they say for their verdict that he is not guilty.

It was adjudged by the court that the defendant was not guilty, and thereupon the State appealed.

*Busbee & Busbee,* for the defendant, argued:

Defendant is indicted in two counts, (amounting practically to one—the only variation being between a charge of playing and betting money,) for a violation of Battle's Revisal, chap. 32, sec. 72, for betting money or playing at a gaming table.

The defendant is not indicted for a violation of section 69.

The proceeding described is clearly a lottery. Bishop on Stat. Crimes, secs. 952, 953, 954, 955, 956. *Bell* v. *the state,* 5 Sneed (Tenn.) 507, 509.

It is not now indictable to construct *a place* at which games of chance are played, &c., as it was in 1848, as in *tate* v. *Guyton,* 8 Ired., 273. Rev. Stat., chap. 34, sec. 68, is not now in force.

It is only indictable "to erect," &c., and to play, &c., at a gaming table (other than a faro bank,) by whatever name called, at which games of chance shall be played.

By admitted law of construction, "a gaming table, other than a faro bank," means a table of like kind. It is not intended that a buyer of a lottery ticket should be indicted, because there was a table in the room in which the tickets were sold, upon which they were placed. Rev. Stat., chap. 34, sec. 68; Rev. Code, chap. 34, sec. 72; Bat. Rev., chap. 32, sec. 72.

As to what gaming tables were meant, see Bish. on Stat. Crimes, sec. 866; *Kitte* v. *Commonwealth,* 18, B. Monroe (Ky.) 35, 39, 40.

In a game there must be a winner and a loser, but in a lottery as the prizes are to be distributed in any event, the man-

.ager does not win, because the ticket purchaser loses. Bishop 857, 858.

SETTLE, J. The enterprise described in the special verdict is a lottery; and a lottery is a species of gambling; and gambling is immoral and is denounced by statute. But all gaiming is not immoral, and it may be that all immoral games are not prohibited by statute. And however immoral this or that game may be, we cannot go outside of the statute law of this State to punish those who play at them. The managers of a lottery and also their agents for selling tickets, are indictable under chap. 32, sections 69 and 90 of Battle's Revisal; but these sections do not embrace persons who buy their tickets.

The object of these two sections is to punish the chief offenders, who inaugurate and carry on the schemes specified therein, but they were not framed, to catch small and occasional transgressors of morals and propriety.

This is not so however with sections 71 and 72 of the same chapter, which denounce faro banks and gaming tables (other than a faro bank), by whatever name such table may be called; for in these sections the meshes are so adjusted as to catch both large and small; in fact all who participate in such games.

The indictment in the case before us is framed upon section 72, but the facts do not support it.

The State lays stress upon the fact that the lottery, or game, if you choose, was carried on at a table. The classes of offenders specified in sections 69 and 70 cannot be enlarged, nor can those specified in sections 71 and 72 be diminished by the mere circumstance of the presence or absence of a table in the room or place where they carry on lotteries and games.

In other words while the seller of a lottery ticket is indictable, the purchaser is not, and simply for the reason that the statute makes it so.

Can the fact that the purchaser of a lottery ticket, obtained

it at a *table*, instead of on the street, effect his guilt under the statute? We think not.

We have examined Bishop on Statutory Crimes, and all the cases cited by counsel for the prosecution and defense, and as far as they are applicable to our statute they support the conclusion at which we have arrived.

The judgment of the Superior Court is affirmed.

PER CURIAM.                                    Judgment affirmed.