STATE v. JACK LEON POWELL.

(Filed 26 February, 1941.)

**1. Gaming § 5—**

   Evidence that officers apprehended defendant with lottery tickets in his possession and that upon seeing the officers he tried to dispose of same, *is held* sufficient to be submitted to the jury in this prosecution for operating a lottery and for illegal possession of lottery tickets, the evidence being sufficient to make out a *prima facie* case under the provisions of statute. C. S., 4428, as amended by ch. 434, Public Laws of 1933.

**2. Gaming § 4: Criminal Law § 81c—Testimony that witness had experience with type of lottery in question held competent to show he was qualified to testify that tickets were lottery tickets.**

Where an officer testifies that lottery tickets found in defendant's possession are of the type used in connection with a "butter and egg lottery," it is competent for the officer to testify in response to a question by the solicitor that he had had lots of "cases of this kind" in order to show that the witness was familiar with the lottery in question and was qualified to testify that the tickets were of that character, but further, even if it should be conceded that the testimony was immaterial, it is not prejudicial, there being nothing in the record to connect defendant with, or even raise a suspicion that defendant had been connected with, the other cases.

APPEAL by defendant from *Rousseau, J.,* at October Term, 1940, of ROCKINGHAM.

Criminal prosecution tried upon warrant charging defendant with operation of a lottery and with illegal possession of lottery tickets tried *de novo* in Superior Court of Rockingham County, North Carolina, on appeal thereto from the recorder's court of the city of Reidsville in said county.

In the trial court the State offered evidence tending to show these facts: On the morning of 22 February, 1940, two police officers of the city of Reidsville, under authority of a search warrant therefor, entered the barber shop of Reubin Williamson on Market Street in said city. At that time Williamson was in the front cutting hair, and defendant and three others, one of whom was named Carter, were standing at the back of the barber's counter upon which there were numerous envelopes containing lottery tickets. Upon seeing the officers all except Williamson ran into a back room. Defendant threw behind a shoe box, which was in the back of the shop, four envelopes on which were written the initials "J. P." and in which there were tickets which are used in connection with what is known as "butter and egg lottery." Nothing else was in these envelopes. "The Carter boy" threw down a book with a quarter in it. Other tickets were found under the floor mat and "a quantity of new books" were found in the back of the shop. Neither defendant nor Carter worked in the barber shop. All were arrested. Williamson and Carter were indicted. Carter was convicted.

Officer Allen testified that: "These tickets are used in connection with a lottery known as 'butter and egg lottery.'" Then, over objection of defendant, in answer to the question, "Have you had any experience in investigating this type of case?" the officer was permitted to answer: "Yes, sir, we have had lots of cases of this kind in Reidsville." Defendant moved to strike the answer. Denied. Exception.

Verdict: Guilty as charged in the warrant.

Judgment: Confinement in the common jail of Rockingham County

for a period of six months and assigned to work on the roads under the control and supervision of State Highway and Public Works Commission. Defendant appeals therefrom to Supreme Court and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Patton for the State.*

*Sharp & Sharp for defendant, appellant.*

WINBORNE, J. Defendant contends that there is error (1) in refusing to grant his motion for judgment of nonsuit under C. S., 4643, and (2) in admitting testimony of officer that "We have had lots of cases of this kind in Reidsville." Upon the facts shown neither contention is tenable.

(1) The statute, C. S., 4428, declaring it to be a misdemeanor for any person to "open, set on foot, carry on, promote, make or draw, publicly or privately, a lottery, by whatever name, style or title the same may be denominated or known, . . .," as amended by chapter 434 of Public Laws of 1933, further provides that: "Any person who shall have in his possession any tickets, certificates or orders used in the operation of any lottery shall be held liable under this section, and the mere possession of such tickets shall be *prima facie* evidence of the violation of this statute."

When tested by the provisions of this statute the evidence in the case in hand is sufficient to make out a *prima facie* case for the consideration of the jury. See *S. v. Jones,* 213 N. C., 640, 197 S. E., 152.

The cases *S. v. Fowler and Brincefield,* 205 N. C., 608, 172 S. E., 191, and *S. v. Sherman and Wray,* 216 N. C., 719, 6 S. E. (2d), 529, relied upon by defendant, are distinguishable, for there the evidence against Brincefield in the first case and Wray in the second, as to whom nonsuits were granted, fails to show either of them in actual possession of lottery tickets. Nor can defendant find comfort in *S. v. Bryant,* 74 N. C., 207, which dealt with the law as it then existed long prior to the enactment of chapter 434 of Public Laws 1933.

(2) Defendant contends that the evidence to which objection is taken is immaterial and prejudicial. When read in connection with preceding testimony of the witness, the evidence was both relevant and competent for the purpose of showing that the witness was familiar with the lottery in question and qualified to testify that the tickets in hand were of that character. But, if it should be conceded that it were immaterial, it is not prejudicial for there is nothing in the record to connect defendant, or raise even a suspicion that defendant has been connected with the other cases.

In the trial below, we find

No error.